**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DAVID J. DONER,

                        Plaintiff,

v.                                                      8:16-CV-0883
                                                         (CFH)
COMM'R OF SOC. SEC.,

                        Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

SCHNEIDER & PALCSIK                    MARK A. SCHNEIDER, ESQ.
Counsel for Plaintiff
57 Court Street
Plattsburgh, New York 12901

U.S. SOCIAL SECURITY ADMIN.          ARIELLA R. ZOLTAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, New York 10278

**CHRISTIAN F. HUMMEL,**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

Currently before the Court, in this Social Security action filed by David J. Doner

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on

the pleadings and Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 9, 10.)

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is

denied, and Defendant's motion for judgment on the pleadings is granted.

## I.   RELEVANT BACKGROUND

### A.   Factual Background

Plaintiff was born in 1961, making him 41 years old at the alleged onset date, and 45 years old at the date of the ALJ's decision.  (T. at 30).[1]  Plaintiff reported completing school to the ninth or tenth grade without obtaining a GED.  (*Id.*)  Plaintiff has past relevant work as a medium-to-heavy equipment operator and logger.  (*Id.* at 31).  Plaintiff stopped working in July 2009.  (*Id.*)  Generally, Plaintiff alleges disability consisting of diabetes, neuropathy, heart attack, sleep apnea, depression, and asthma. (*Id.* at 123).

### B.   Procedural History

Plaintiff applied for Disability Insurance Benefits on January 25, 2013.  (T. at 90-118).  Plaintiff's application was initially denied on March 28, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").   (T. at 48-50; 56-57).  Plaintiff appeared at a video hearing before ALJ Carl E. Stephan on May 22, 2014.  (*Id.* at 27-41).  On July 31, 2014, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (*Id.* at 14-23)[2]  On July 18, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (*Id.* at 1-4, 9.)

### C.   The ALJ's Decision

---

[1]  The Administrative Transcript is located at docket number 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.
[2]

Applying the five-step disability sequential evaluation, the ALJ determined that Plaintiff was insured for disability benefits under Title II until March 31, 2007. (T. 16.) The ALJ also found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of December 31, 2002 until the date last insured. (*Id.*) At step two, the ALJ found that cervical spine disorder was a severe impairment for the applicable period between December 31, 2002 and March 31, 2007. (*Id.* at 16-18.) At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (*Id.* at 18.) More specifically, the ALJ considered Listing 1.00 (musculoskeletal system). (*Id.*) Prior to reaching step four, the ALJ concluded that, during the relevant period, Plaintiff had the residual functional capacity ("RFC") to perform "the full range of light work as defined in 20 C.F.R. § 404.1567(b)." (T. 19.) At step four, the ALJ found that the above RFC prevented Plaintiff from performing his past relevant work, but that there "were jobs that existed in significant numbers in the national economy that the plaintiff would have performed." (*Id.* at 22.) Thus, the ALJ found that Plaintiff was not disabled pursuant to the Medical Vocational Guidelines. (*Id.* at 22-23.)

### D.  Arguments

Plaintiff argues that the ALJ failed to fully develop the record. (Dkt. No. 9, at 9-11 [Pl. Mem. of Law].) Specifically, Plaintiff argues that the ALJ erred in failing to seek his medical records related to his Worker's Compensation claim, and in failing to instruct Plaintiff's non-attorney representative to obtain those missing records. (*Id.* at 11) Plaintiff further argues that he was not adequately represented at the hearing by his

3

non-attorney representative because there was no evidence that the hearing representative had the training and qualifications to act in that capacity, and the ALJ did not question her regarding her qualifications. (*Id.* at 12-14)  Plaintiff argues that, because of this, the Court should treat Plaintiff as having been unrepresented and hold the ALJ to the heightened standard applicable to *pro se* claimants. (*Id.* at 14)  Plaintiff also contends that the ALJ's credibility determination was unsupported by clear and convincing evidence. (*Id.* at 14-16)  Plaintiff argues that the ALJ erred in relying on records from after the date last insured and in making a credibility determination without a fully-developed medical record. (*Id.* at 15-16)  Finally, Plaintiff argues that he is disabled by his morbid obesity in combination with his other impairments, and that the ALJ failed to properly and fully consider Plaintiff's morbid obesity as a severe impairment or in combination with his other impairments. (*Id.* at 16-18)

Defendant argues that the ALJ properly developed the record. (Dkt. No. 10, at 4-9 [Def. Mem. of Law].)  In response to Plaintiff's second argument, Defendant argues that Plaintiff should not be treated as a *pro se* claimant because Plaintiff's non-attorney representative provided adequate representation. (*Id.* at 5-6)  Defendant also argues that Plaintiff's objection to his non-attorney representative's representation at the hearing is moot because Plaintiff's current representative had the opportunity to submit to the Appeals Council any evidence he believed was missing from the record. (*Id.* at 7)  In response to Plaintiff's first argument, Defendant argues that there was no further duty for the ALJ to develop the record because Plaintiff did not identify any gap in the record, and the record indicates that the Agency attempted to obtain more information from Plaintiff regarding his treating sources that was never provided. (*Id.* at 7-9)

4

Second, Defendant argues that the new evidence submitted with Plaintiff's memorandum does not warrant remand because Plaintiff did not show good cause for failing to submit the evidence at an earlier stage. (*Id.* at 9-11) Defendant further argues that many of the reports in this evidence proffered by Plaintiff are not new, would not have influenced the Commissioner to decide differently, or were not relevant because it related to a treatment outside of the period at issue. (*Id.* at 10-11) Third, Defendant argues that the ALJ's credibility finding is supported by substantial evidence, noting that the ALJ cited to evidence that Plaintiff worked throughout the relevant period as a heavy equipment operator, that one of his treating physicians consistently opined that Plaintiff was not disabled, that the medical records did not support his allegations of disability, and that treatment for his impairments was routine. (Dkt. No. 10, at 11-14 [Def. Mem. of Law].) Defendant also argues that the ALJ did not rely on evidence from after the date last insured to make his credibility determination, but rather on notes from a treating source during the relevant period. (*Id.* at 13-14) Finally, Defendant argues that the ALJ properly considered Plaintiff's obesity, noting that the ALJ considered it at step two when assessing severity insofar as he explicitly indicated that he considered Plaintiff's obesity pursuant to SSR 02-1p. (*Id.* at 14-15) Defendants contend that because there was no apparent evidence to support specific functional limitations as a result of Plaintiff's obesity. (*Id.*)

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 400 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."

*Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court

must afford the Commissioner's determination considerable deference, and may not

substitute "its own judgment for that of the [Commissioner], even if it might justifiably

have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health &*

*Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).


### B.    Standard to Determine Disability

"Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months."  *Id.* § 423(d)(1)(A).  A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available to

him or her based upon age, education, and work experience.  *Id.* § 423(d)(2)(A).  Such

an impairment must be supported by "medically acceptable clinical and laboratory

diagnostic techniques."  *Id.* § 423(d)(3).  Additionally, the severity of the impairment is

"based [upon] objective medical facts, diagnoses or medical opinions inferable from

[the] facts, subjective complaints of pain or disability, and educational background, age,

and work experience."  *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458,

at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir.

1983)). The Second Circuit employs a five-step analysis, based on 20 C.F.R. §

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).

### III.    ANALYSIS

### A.    New Evidence

"A remand pursuant to sentence six of [42 U.S.C.] section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 217 (N.D.N.Y. 2009) (citing *Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991)). However, to qualify for a remand on this basis, the evidence must be new, material, and there must have been "good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Davidson v. Colvin*, No. 1:12-CV-0316 (MAD/VEB), 2013 WL 5278670, at *5 (N.D.N.Y. Sept. 18, 2013) (quoting 42 U.S.C. § 405(g) (sentence six)). All three prongs of this test must be met to warrant a remand pursuant to Sentence Six of 20 U.S.C. § 405(g). First, evidence is "new" where it is "not merely cumulative of evidence in the administrative record." *Id.* at *5 (citing *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (citations omitted)). Second, evidence is "material" where it is "relevant to the claimant's condition during the time period for which benefits were denied and probative" and "there is a reasonable possibility that the new evidence would have materially changed the outcome before the Commissioner." *Id.* (citing *Tirado*, 842 F.2d at 597) (citations omitted); *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)). Lastly, Plaintiff must demonstrate that there was good cause for failing to present the evidence at an earlier stage of the adjudication of his claim. *Id.* (citing *Lisa*, 940 F.2d at 43).

Plaintiff submitted additional evidence with his memorandum of law that he claims is relevant and undermines the ALJ's findings. (*See* Pl. Mem. of Law) Although

Plaintiff does not specify whether he is seeking a Sentence Six remand based on this additional evidence, this Court still must properly analyze the issue under the Second Circuit's standards for assessing whether a Sentence Six remand is warranted.   First, this Court finds that a remand is not warranted for consideration of the additional evidence presented for the first time to this Court because Plaintiff has not shown that there was good cause for failing to submit these records to either the ALJ or the Appeals Council.  Taking Plaintiff's arguments regarding the deficiency of Plaintiff's representation at the hearing level at face value for the sake of this argument,[3] such deficiency does not provide any indication as to why these records were not submitted when Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council.  In his memorandum, Plaintiff states that this additional evidence was part of his "own files," which indicates Plaintiff was in possession of this evidence, and, therefore, arguably could have submitted it sooner.  However, whether Plaintiff had possessed this evidence since the time of the treatment or acquired it more recently is not clear.  (*Id.* at 16)

Additionally, a letter to the Appeals Council from August 15, 2014 indicates that Plaintiff's current representative in this appeal had begun representing him before he submitted his request for review to the Appeals Council.  (T. 184.)  In a subsequent letter from August 21, 2014, Plaintiff's current representative submitted evidence related to his work activity in 2009, but submitted no additional medical evidence.  (*Id.* at 178.)  Although it is not clear when Plaintiff and his representative obtained the additional evidence submitted to this Court, Plaintiff has not attempted to offer any reason

---

[3]        The merits of this contention will be discussed in detail *infra*.

explaining what prevented submission of these records to the Appeals Council.  This is particularly noteworthy because a majority of the records relate to treatment rendered in the 1990s, and, therefore, was available many before his filing of his disability application. As this Court can find no suggestion of good cause in the record, and Plaintiff has not provided any explanation in his memorandum, Plaintiff has not met the third requirement to show that remand is warranted for consideration of this evidence.

Second, portions of this evidence fail to meet the either the first and/or second requirements.  *Davidson*, 2013 WL 5278670, at *5.  The evidence consists of two distinct classifications: (1) evidence from the 1990s related to Plaintiff's work injury; and (2) a report from independent medical examiner Mark Kircher, M.D., from May 16, 2013. (Dkt. No. 9, at 21-53 [Pl. Mem. of Law].)  Dr. Kircher's report appears in the evidence that was before the ALJ, and, therefore, is not new.  (T. 460-66.)  The records from the 1990s date many years before Plaintiff's alleged onset date of December 31, 2002, and, therefore, are not necessarily relevant to assessing Plaintiff's condition during the time period at issue in Plaintiff's claim.  The 1990s evidence also does not suggest a reasonable possibility that consideration of this evidence would have materially altered the ALJ's decision related to Plaintiff's functioning between December 31, 2002, and March 31, 2007.  This is because there was ample evidence related to Plaintiff's cervical spine impairment and his other impairments to show his functioning during that time period.[4]  Consequently, Plaintiff has also not shown that the newly submitted

---

[4]  The additional evidence contains intelligence testing from March 1998 that suggests borderline intellectual functioning, which might possibly merit further consideration.  (Dkt. No. 9, at 22-25 [Pl. Mem. of Law].)  However, as noted above, Plaintiff has not shown there was good cause for failing to submit this report at a previous stage of his appeal and therefore, such evidence also would not meet the requirements to warrant a Sentence Six remand.

evidence is new and material in addition to failing to show there was good cause for their omission at earlier stages in the adjudicative process.

For all of the above reasons, the additional evidence Plaintiff submitted with his memorandum is not new and material and there is no apparent good cause for the failure to submit it prior to this stage of his appeal.  Remand therefore is not warranted on this basis.

### B.  ALJ's Duty to Develop the Record

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation to develop the administrative record'" due to the non-adversarial nature of a hearing on disability benefits.  *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999); citing *Draegert v. Barnhart*, 311 F.3d 468 (2d Cir. 2002), *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004)); *see also Janes v. Colvin,* No. 6:15-CV-1518, 2017 WL 972110, at *3 (N.D.N.Y. Mar. 10, 2017) (citing 20 C.F.R. § 404.1512(d); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).  "'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Moran*, 569 F.3d at 112 (quoting *Lamay*, 562 F.3d at 508-09).  "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*

*v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).

Plaintiff argues first that the ALJ erred insofar as he failed to develop the record, particularly with regard to the medical records related to Plaintiff's worker's compensation claim, and in failing to instruct Plaintiff's representative to obtain those records. (Dkt. No. 9, at 9-11 [Pl. Mem. of Law].) Plaintiff's arguments must fail because Plaintiff's representative indicated to the Agency that the relevant evidence from Plaintiff's worker's compensation claim had already been submitted. In a letter dated May 19, 2014, Plaintiff's hearing representative Kimberly Wills stated the following: "I have uploaded medical records [] obtained from Dr. Honorio T. Dispo, M.D. *as well as his Workers' Compensation Board file* for review and consideration in the above referenced matter. Kindly make these records part of the exhibit file and include them in the decision making process of this claim." (T. 177) (emphasis added). Given this clear statement from Plaintiff's hearing representative, the ALJ would have had reason to believe that all the evidence connected with Plaintiff's worker's compensation claim that would be relevant to his disability claim had been submitted. Consequently, there is no reasonable basis for asserting that the ALJ had a duty to seek out records that he was led to believe had already been submitted by Plaintiff's representative.

Plaintiff also fails to specify any worker's compensation records missing from the record that the ALJ was required to obtain. If plaintiff intends to refer to the treatment records from the 1990s which were submitted with his memorandum, this Court has already determined that those records are not new and/or material. Moreover, Plaintiff has not identified any gap in the evidence that these records remedy as related to

whether Plaintiff was disabled at any time between his alleged onset date and the date last insured.  The important question is whether the ALJ had a sufficiently complete record to make a reasoned determination as to Plaintiff's disability.  *See Rosa*, 168 F.3d at 79 n.5.  The evidence from Dr. Dispo and the other sources during the relevant time period provide such sufficient evidence, and Plaintiff has not indicated specifically how this evidence was incomplete.  As there is no reason to believe that other worker's compensation treatment evidence existed from during the relevant time period other than that which Plaintiff's representative submitted before the hearing, the record appears to be complete and the ALJ had no further duty to develop the record.

In addition to his failure-to-develop argument, plaintiff contends that the ALJ should have treated him as if he were unrepresented at the hearing because his non-attorney representative did not provide adequate representation.  (Dkt. No. 9, at 12-14 [Pl. Mem. of Law].)  Plaintiff alleges that there was no evidence that Ms. Wills had "any training or qualifications to act as a non-attorney representative," yet fails to indicate what training or qualifications he believes are required for a non-attorney representative to be sufficiently helpful.  Plaintiff does point to 20 C.F.R. § 404.1705, which outlines the Agency's policy on who may serve as a representative in a Social Security disability hearing, but does not articulate how Ms. Wills failed to meet this criteria.  (*Id.* at 12)  All the regulation specifically requires of a non-attorney representative is that she is "generally known to have good character and reputation," are capable of "giving valuable help" with the claim, is not suspended or disqualified from acting as a representative, and is not prohibited by law from acting as a representative.  20 C.F.R. §

404.1705(b).[5]  The Social Security Administration only requires more formal qualifications and training in situations where a non-attorney representative wishes to receive direct payment of fees.[6]  Plaintiff has not provided any evidence to show that Ms. Wills did not meet the base standards to qualify as a non-attorney representative outlined in 20 C.F.R. § 404.1705(b).  Additionally, there is no support for Plaintiff's argument that 20 C.F.R. § 404.1705 requires the ALJ to inquire into Ms. Wills qualifications, as that regulation does not place any such affirmative burden on the ALJ to question non-attorney representatives about such matters, particularly where the Plaintiff and his non-attorney representative have provided affirmative proof that Plaintiff wanted Ms. Wills to act as his representative.  *See* 20 C.F.R. §§ 404.1705(b), 404.1707.

Additionally, Plaintiff's citations to what he perceives to be proof of Ms. Wills' inadequate performance are unpersuasive and inconsistent with the record.  First, Plaintiff alleges that Ms. Wills failed to submit any records from before the date last insured, yet that allegation is clearly contradicted by the treatment notes in the record, particularly those from Dr. Dispo between March 2003 and March 2007.  Plaintiff also argues that Ms. Wills "did not appear to know that [Plaintiff] had to prove disability prior to March 31, 2007" because "[h]er questioning was mostly about his current conditions."

---

[5]    The regulations additionally require that, in order to be recognized as the claimant's representative in a claim, a non-attorney representative must sign a written notice that was also signed by the claimant that indicates the claimant wants that person to act as their representative.  *See* 20 C.F.R. § 404.1707.  The record contains forms for the appointment of Ms. Wills as representative and a fee agreement, both of which are signed by Plaintiff and Ms. Wills and both of which specifically and clearly indicate that Plaintiff is intending to employ Ms. Wills as his representative.  (T. at 54-55.)

[6]    *See Direct Payment to Eligible Non-Attorney Representatives*, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/representation/nonattyrep.htm (last visited June 27, 2017); *see also* 20 C.F.R. § 404.1717 (outlining in more detail the criteria to qualify as a non-attorney representative eligible to receive direct fees).  Notably, on the appointment of representative form, Ms. Wills checked that she was a non-attorney who was "not participating in the direct fee payment demonstration project," indicating she did not need to possess the higher formal qualifications required of a non-attorney representative who wishes to receive direct payment of fees.  (T. at 54.)

(Dkt. No. 9, at 13 [Pl. Mem. of Law].)  However, the hearing testimony does not clearly

support Plaintiff's interpretation.  Although Ms. Wills began her questioning by asking

questions of Plaintiff without specifying the time period, she answered in the affirmative

when the ALJ asked her whether she was aware that Plaintiff's date last insured was

March 31, 2007, and responded, "I understand, sir" when the ALJ stated, "[y]ou have to

establish disability prior to that date or on that date."  (T. 36.)  Ms. Wills then made her

subsequent questions more specific, asking Plaintiff about his conditions, symptoms,

and treatment prior to the date last insured.  (*Id.* at 36-38.)  The testimony as a whole

does not reasonably support Plaintiff's assertion that Ms. Wills was completely unaware

of the need to prove disability prior to the date last insured, only that she was less

specific in her questioning than she could have been, which she subsequently remedied

by soliciting testimony regarding Plaintiff's condition during the relevant period.   There

is no evidence to suggest that plaintiff was harmed by her initial, more general

questioning.

Plaintiff's assertion that the length of the hearing is sufficient to indicate

inadequate representation is also without force.  Plaintiff does not identify any important

questions Ms. Wills neglected to ask nor the information she failed to elicit that suggest

that the length of the hearing was an indicator that she provided inadequate

representation.  The record shows that Ms. Wills questioned Plaintiff about his

impairments, symptoms, treatment, functional limitations, and the reasons why he had

trouble performing his most recent work in 2009.  (T. 34-38.)  She reported to the ALJ

that she had contacted Plaintiff's previous employer to obtain clarification on an issue

related to that work, and the ALJ held the record open for two weeks on her request in

order for her to obtain clarification.  (*Id.* at 32, 40-41.)  There is evidence showing that she submitted an updated information form to the Social Security Administration, and that she obtained and submitted records from Dr. Dispo and his worker's compensation claim prior to the hearing.  (*Id.* at 144, 177.)  As Plaintiff's arguments regarding failure to develop the record are not supported by the record, he has not shown that Ms. Wills' representation deviated significantly from the standards expected of a non-attorney representative or that her actions in any way prevented him from receiving a fair hearing with adequate record development.  *See generally Melton v. Colvin*, No. 13-CV-6188, 2014 WL 1686827, at *9 (W.D.N.Y. Apr. 29, 2014) (finding that the plaintiff's attorney provided sufficient representation where he had sufficiently developed the evidence concerning the plaintiff's impairments, advocated for the plaintiff at the hearing, and supplemented the record after the hearing with additional relevant documentation).  Consequently, Plaintiff's arguments that he should have been treated as a *pro se* claimant for the purposes of the ALJ's duty to develop the record are without force.  Further, such an argument is essentially mooted by the fact that the evidence Plaintiff alleges that the ALJ and Ms. Wills failed to obtain was, in fact, submitted by Ms. Wills before the hearing.

For all of the above reasons, the ALJ did not fail to develop the record and there is no evidence to support ineffective representation.  Accordingly, remand is not warranted on these bases.

### C.    ALJ's Credibility Finding

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984)). Because the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment generally is entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Plaintiff's arguments regarding the ALJ's credibility findings appear to suggest that the ALJ erred by relying on reports of Plaintiff's daily activities and evidence from after the date last insured and by failing to obtain a complete record before assessing his credibility. (Dkt. No. 9, at 15-16 [Pl. Mem. of Law].) However, as Defendant points out, Plaintiff's objections are not consistent with the evidence or the ALJ's actual

findings, and the ALJ included additional reasons for the adverse credibility finding that Plaintiff does not acknowledge or challenge.  (Dkt. No. 10, at 11-14 [Def. Mem. of Law].)

In support of the adverse credibility finding, the ALJ noted that (1) Plaintiff's allegations were inconsistent with the medical evidence, (2) his medications and other treatment have been effective in controlling his symptoms, (3) no treating doctor had opined any restrictions during the relevant period, (4) Plaintiff failed to follow up on recommended treatment because he was too busy working, and (5) he continued to work throughout the relevant period as well as after the date last insured.  (T. 21-22.) Although Plaintiff appears to object to the ALJ's consideration of his reported daily activities, this is a factor that the ALJ is explicitly allowed and required to consider pursuant to the regulations.  *See* 20 C.F.R. § 404.1529(c)(3)(i); *Calabrese v. Astrue*, 358 F. App'x. 274, 277-78 (2d Cir. 2009) (summary order) (noting that daily activities are one of the factors the ALJ must consider when assessing credibility).  The cases Plaintiff cites in support of his argument are inapposite here, because the ALJ did not use insubstantial or irrelevant activity to justify his finding, nor did he imply that Plaintiff needed to show he was essentially bedridden.  (Dkt. No. 9, at 15 [Pl. Mem. of Law].)

Plaintiff has not suggested how the ALJ's mention of evidence related to Plaintiff's activities was in improper.  The ALJ cited to the ample notations in Dr. Dispo's treatment records indicating that Plaintiff continued to work as a heavy equipment driver throughout the relevant period despite his reported symptoms.  (T. 20-21.)  This type of evidence of Plaintiff's typical activity level is directly related to whether Plaintiff credibly alleged an inability to work during the relevant period, because it showed he was in fact able to tolerate work with fairly demanding exertional requirements throughout that

same period.  *See McKinstry v. Astrue*, 511 F. App'x. 110, 112 (2d Cir. 2013) (summary order) (finding no error in the credibility finding where the ALJ relied on the plaintiff's activities, medical treatment history, and continued work activities during the relevant period, all of which conflicted with the plaintiff's testimony).  There was nothing improper in the ALJ's consideration of Plaintiff's activities, particularly his work during the relevant period.

Although the ALJ did point to some evidence from after the date last insured, these citations were made to show inconsistencies in Plaintiff's statements, such as discrepancies regarding when and why Plaintiff stopped working.  (T. 21.)  Contrary to Plaintiff's implications, the ALJ did not heavily rely on medical evidence from after the date last insured.  Rather, the ALJ found that Plaintiff's allegations were inconsistent with the medical treatment evidence, and the discussion of that evidence in the written decision is firmly focused on the treatment between the alleged onset date and the date last insured.  (*Id.* at 19-22.)  The mere fact that the ALJ alluded to an inconsistency between Plaintiff's reports that his conditions have progressively worsened and a lack of evidence of such worsening does not undermine the fact that the ALJ properly based his assessment primarily on medical and other evidence from the relevant period.  (*Id.* at 21.)

Additionally, Plaintiff's argument that the ALJ's determination was improper because it was based on an incomplete record has already been addressed and rejected in previous sections of this Decision and Order.  They do not provide a basis for questioning the ALJ's credibility finding.  For the above reasons, the ALJ provided

specific reasons for the credibility finding that show that her conclusion is supported by substantial evidence.  Thus, remand is not warranted on this basis.

### D.    Plaintiff's Obesity

SSR 02-1p indicates that "[o]besity can cause limitation of function."  SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).  "It suggests that obesity may limit exertional and postural functions, as well as a claimant's 'ability to perform routine movement and necessary physical activity within the work environment' or to 'sustain function over time.'"  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 277 (N.D.N.Y. 2009) (quoting SSR 02-1p, 2000 WL 34686281).  However, "'[o]besity is not in and of itself a disability.'" *Martin v. Astrue*, No. 5:05-CV-0072, 2008 WL 4186339, *3 (N.D.N.Y. Sept. 9, 2008) (quoting *Guadalupe v. Barnhart,* No. 04-CV-7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005)).  Rather, obesity can only meet a Listing "'if there is an impairment that, in combination with obesity, meets the requirements of a listing.'"  *Martin*, 2008 WL 4186339, *3 (quoting SSR 02-1p, 2000 WL 34686281)).  "However, the ALJ "'will not make assumptions about the severity or functional effects of obesity combined with other impairments. . . . [he] will evaluate each case based on the information in the case record.'"  *Chavis v. Astrue*, No. 5:11-CV-0220 (TJM/TWD), 2012 WL 6150851, at *3 (N.D.N.Y. Sept. 12, 2012) (quoting SSR 02-1p, 2002 WL 34686281).  An ALJ can show that she considered the effects of a claimant's obesity even where she fails to explicitly address that impairment when she relies on evidence from physicians who considered the claimant's functioning as a result of all the claimant's impairment, including obesity.

*See Ingianni v. Comm'r of Soc. Sec.*, No. 8:13-CV-0013 (MAD/ATB), 2014 WL 1202624, at *8 (N.D.N.Y. Mar. 24, 2014); *Rockwood*, 614 F .Supp. 2d at 277.

Plaintiff appears to argue, relying on a single unreported and nearly ten year old case from the Western District of New York, that a Body Mass Index ("BMI") of over 50 is conclusive proof that obesity is disabling.  (Dkt. No. 9, at 17 [Pl. Mem. of Law].)  However, the Social Security Administration no longer includes a Listing for obesity as a specific medical impairment, so such an argument that there is a BMI value above which a claimant is *per se* disabled is not consistent with the Agency's current policies.  Instead, under SSR 02-1p, a claimant's functional deficits arising from obesity are the relevant inquiry, rather than the extent of the obesity itself.  *See* SSR 02-1p, 2002 WL 34686281.

In his Step Two discussion, the ALJ noted Plaintiff's weight and height as measured on various examinations during the relevant period, specifically indicated that he found obesity was not a severe impairment based on the evidence, and explicitly noted that he had considered obesity pursuant to the guidelines in SSR 02-1p.  (T. 17-18.)  These statements show that the ALJ explicitly considered Plaintiff's obesity.  The ALJ also afforded significant weight to treating physician Dr. Dispo's recurrent statements that Plaintiff was not disabled because he remained able to perform his work as a heavy equipment operator throughout the relevant time period.  (T. 415-6, 418, 420, 422-26).  Although Dr. Dispo did not specifically note Plaintiff's weight on his examinations, other sources who treated Plaintiff during the relevant period did record his weight and noted little physical or functional abnormality on contemporaneous physical examinations.  (T. 250, 252.)

The only source who offered an explicit indication of how Plaintiff's functioning was impacted by his obesity was independent medical examiner Dr. Kircher in May 2013. (T. 466.) Although this assessment occurred well after the date last insured, it provides an important assessment about the effects of Plaintiff's obesity. Dr. Kircher noted that Plaintiff was 317 pounds on that date, which is similar to or slightly less plaintiff's measured weight within the relevant period. (*Id.* at 249, 255, 465.) Dr. Kircher observed that Plaintiff had limited range of motion in his neck, noting that "a significant amount of this may be accounted for by his body habitus." (*Id.* at 465.) Dr. Kircher otherwise observed that Plaintiff ambulated independently, had good upper extremity strength, some baseline paresthesia in his hands without evidence of wasting or loss of strength, and some tenderness to palpation between his scapula up to the occipital region. (*Id.*) Considering the effect of Plaintiff's cervical spine impairment and obesity, Dr. Kircher concluded that Plaintiff had only a "mild degree of disability." (*Id.* at 466.) Dr. Kircher's opinion and examination, therefore, provide compelling evidence from a physician that Plaintiff's obesity -- which was at nearly the same extent in 2013 as it had been during the relevant period -- even when considered in combination with his cervical spine impairment, did not impose any greater obvious restrictions than those accounted for in the RFC for light work, let alone disability as defined by the Social Security Administration.

Perhaps the most compelling evidence supporting a finding that there was no error in the ALJ's assessment of the functional effects of Plaintiff's obesity is the fact that Plaintiff continued to work as a heavy equipment operator throughout the relevant period despite all of his combined impairments and symptoms, including his obesity.

This, as much as the explicit statements from Dr. Dispo that Plaintiff was not disabled, suggests strongly that Plaintiff's obesity, even in combination with his other impairments, did not prevent him from performing all types of work on a full time and sustained basis. As the ALJ explicitly considered Plaintiff's obesity at step two, Dr. Dispo's statements, and Plaintiff's ability to work throughout the relevant period, the ALJ's decision supports a finding that the ALJ adequately assessed Plaintiff's obesity. Additionally, Dr. Kircher's 2013 examination and opinion provide additional persuasive evidence from which this Court can determine that the ALJ's findings are supported by substantial evidence. Plaintiff has not alleged what evidence, if any, suggests greater restrictions as a result of obesity, either alone or in combination with his cervical spine impairment.

For all of the above reasons, the ALJ properly and adequately assessed the impact of Plaintiff's obesity, and remand is not warranted on this basis.

### IV. CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: July 24, 2017
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge